### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GLORIA WORTHINGTON** | : | |
| 941 Pine Court | : | |
| Perkasie, PA 18944 | : | **Civil Case No.** _____ |
| | : | |
| **Plaintiff**, | : | |
| | : | **JURY TRIAL DEMANDED** |
| **v.** | : | |
| | : | |
| **BROWN & BROWN, INC.** | : | |
| 220 S. Ridgewood Avenue | : | |
| Daytona Beach, FL 32114 | : | |
| | : | |
| **Defendant**. | : | |

## COMPLAINT – CIVIL ACTION

Plaintiff, Gloria Worthington ("Plaintiff"), by and through her undersigned attorney, for her Complaint against Defendant Brown & Brown, Inc. ("Defendant"), alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this action contending Defendant violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, by discriminating against Plaintiff and terminating her employment because of her age.[1]

## PARTIES

2.      Plaintiff, Gloria Worthington, is a citizen of the United States and the Commonwealth of Pennsylvania, who currently resides at 941 Pine Court, Perkasie, PA 18944.

3.      Upon information and belief, Defendant Brown & Brown, Inc., is a for-profit corporation organized and existing under the laws of the State of Florida and registered to do

---

[1] Plaintiff intends to amend this Complaint to add a claim under the Pennsylvania Human Relations Act ("PHRA") when it ripens.

business in Pennsylvania with a principal place of business located at 300 Conshohocken State Road, Suite 650, Conshohocken, PA 19428.

4.     At all times relevant hereto, Defendant acted or failed to act through its agents, servants and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendant.

## JURISDICTION AND VENUE

5.     Paragraphs 1 through 4 are hereby incorporated by reference as though the same were fully set forth at length herein.

6.     On or about February 26, 2026, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e). Plaintiff's EEOC charge was docketed as EEOC Charge No. 530-2026-04258. Plaintiff's EEOC charge was filed within one-hundred and eighty (180) days of the unlawful employment practice.

7.     By correspondence dated March 17, 2026, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising her that she had ninety (90) days to file suit against Defendant.

8.     Plaintiff filed the instant action within the statutory time frame applicable to her claims.

9.     Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

10.     This action is authorized and initiated pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*

11.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

12.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as her federal claims.

13.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as Defendant does business in this district and the unlawful practices of which Plaintiff is complaining were committed herein.

## FACTUAL BACKGROUND

14.     Paragraphs 1 through 13 are hereby incorporated by reference as though the same were fully set forth at length herein.

15.     By way of background, on or about December 11, 2017, Plaintiff began her employment with Hayes Companies in the position of Senior Account Executive in Plymouth Meeting, Pennsylvania.

16.     In or around the fall of 2018, Defendant acquired Hayes Companies.

17.     In or around January of 2021, Plaintiff was promoted to the role of Vice President Senior Account Executive.

18.     Throughout the course of her employment, Plaintiff performed her job well, receiving positive feedback on her performance, and given no justifiable discipline.

19.     Defendant's staff was primarily individuals significantly younger than Plaintiff (20+ years younger).

20.     Beginning in or around December of 2023, Plaintiff remained the oldest employee in her department within Defendant.

21.     Shortly thereafter, Defendant's leadership, including Head of Office, Mat Burtt ("Mr. Burtt") (approximately 50 years of age), and Defendant's Employee Benefits Team Lead, P.J. Vrabel ("Mr. Vrabel") (approximately 40 years of age), began questioning Plaintiff about her future with Defendant.

22.     Specifically, Mr. Burtt together with Mr. Vrabel would ask Plaintiff, *inter alia*, "Do you plan to stay? Are you actively looking? How long are you planning to stay?" suggesting that Plaintiff should consider retirement.

23.     In response, Plaintiff advised that she loved her job, had no intention on retiring, and planned to continue to work.

24.     Upon information and belief, around that same time, several older employees retired from Defendant, which prompted Mr. Burtt and Mr. Vrabel's inquiry into whether Plaintiff planned to retire as well.

25.     Shortly after Plaintiff advised that she had no intention of retiring and that she wished to continue to work, Defendant started to push Plaintiff out of the company and began to discriminate against her on the basis of her age.

26.     In or around the Fall of 2024, Defendant only gave Plaintiff a 2% raise; in the past however, Plaintiff had consistently received higher annual raises, ranging from 6% to 9%.

27.     When Plaintiff confronted Mr. Vrabel regarding her lower-than-average raise, Mr. Vrabel could not give Plaintiff a valid explanation that connected with her job performance.

28.     In addition, Plaintiff unexpectedly received a lower-than-average performance evaluation in a few categories, despite receiving excellent performance evaluations prior to being questioned about her retirement.

29.     Later, Plaintiff found out that Mr. Vrabel made the decision to lower her raise.

30. From that period on, Defendant did not offer Plaintiff any more pay raises, nor justifications for same.

31. On or about January 1, 2025, Plaintiff assimilated into Defendant's Bethlehem, Pennsylvania office.

32. Plaintiff also started to train Defendant's Senior Benefits Analyst, Dan Hebenstreit ("Mr. Hebenstreit") (approximately 30 years of age), on account manager job-related duties and responsibilities.

33. Shortly thereafter, Mr. Vrabel's behavior became more hostile and dismissive toward Plaintiff.

34. Further, every time Plaintiff attempted to speak with Mr. Vrabel, he would ignore and/or be dismissive towards her.

35. In addition, Mr. Vrabel would ignore Plaintiff's emails, get visibly frustrated when Plaintiff asked questions during team meetings, and would speak to Plaintiff in an angry and/or elevated tone of voice.

36. As a result, Plaintiff complained to Mr. Burtt about Mr. Vrabel's hostile behavior towards her, but Mr. Burtt dismissed her complaint, stating, "just talk to him… he's a reasonable guy and I believe in him."

37. On or about April 2025, Mr. Vrabel sent an audit report of all of Defendant's employees.

38. Multiple employees of Defendant, including but not limited to Plaintiff, failed this audit.

39. However, Mr. Vrabel told Defendant's employees, including but not limited to Plaintiff, not to worry about failing the audit because it was a transition period.

40.    Furthermore, Plaintiff never received any write-ups, disciplinary action, and/or any coaching in connection to the audit.

41.    On or about September 26, 2025, Mr. Vrabel was pushing Plaintiff to obtain a final installment payment from a client that recently terminated their contract with Defendant.

42.    The client requested Plaintiff to send their information to another broker, which is something that has been done in the past as a sign of cooperation and to ensure receipt of final payments.

43.    Additionally, Plaintiff notified Mr. Vrabel of the clients request and carbon copied Mr. Vrabel to her emails with the client; Mr. Vrabel did not object throughout this process.

44.    On or about October 14, 2025, Mr. Vrabel abruptly terminated Plaintiff for "violating a company policy" and "failing an audit."

45.    As aforesaid, Mr. Vrabel did not object when Plaintiff placed him on notice of her communication with the former client, nor did Plaintiff's actions violate company policy.

46.    Sending information to another broker at the request of a former client while notifying Defendant, is something Plaintiff, as well as other employees of Defendant, have done previously and without any discipline.

47.    With respect to the audit, multiple employees failed yet Plaintiff was the only employee terminated.

48.    Moreover, Defendant had no justifiable reason to use the failed audit as a negative contributing factor for termination, considering Plaintiff was one of many who failed the audit.

49.    Notably, a representative from Defendant's Human Resources was not present during Plaintiff's termination meeting, nor did Plaintiff receive a termination letter.

6

50.     Defendant clearly held a discriminatory animus towards individuals belonging to a protected class on the basis of age, as shown by Mr. Burtt and Mr. Vrabel's prior questioning about Plaintiff's potential retirement and her abrupt termination from employment.

51.     Accordingly, it is believed and therefore averred that Defendant's stated reason(s) for Plaintiff's termination are pretextual and the actual reason Plaintiff was terminated was because of her age (69), in violation of the ADEA.

52.     As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, earnings and earnings potential, benefits, wages, and compensation, as well as other economic damages, mental anguish, pain and suffering, emotional distress, humiliation, and damage to reputation and career.

**COUNT I**
**AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA")**
**29 U.S.C. § 621, *et seq.***
**UNLAWFUL DISCRIMINATION AND TERMINATION**

53.     Paragraphs 1 through 52 are hereby incorporated by reference as though the same were fully set forth at length herein.

54.     Plaintiff was born in 1956 and was over forty (40) years of age at all times material hereto.

55.     Defendants violated the ADEA by terminating Plaintiff's employment because of her age.

56.     As a result of Defendant's deliberate, willful, unlawful, and malicious actions as set forth above, Plaintiff has suffered damages including but not limited to loss of employment, income, wages, compensation, and benefits as well as other economic damages.

7

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A.  Back wages and front pay, in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000.00);

B.  Liquidated damages in the maximum amount permitted;

C.  Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

D.  Any verdict in favor of Plaintiff is to be molded by this Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law;

E.  Pre-judgment interest in an appropriate amount; and

F.  Such other and further relief as is just and equitable under the circumstances.

## <u>JURY DEMAND</u>

**Plaintiff hereby demands a trial by jury as to all issues so triable.**

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

*/s/ Johannes Hoffman*
Johannes Hoffman, Esquire
1628 John F. Kennedy Blvd., Suite 2000
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
jhoffman@phillyemploymentlawyer.com
*Counsel for Plaintiff*

May 27, 2026

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims, and her claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.